840 So.2d 591 (2002)
Ernest GRIFFIN and Lucy Griffin
v.
WICKES LUMBER COMPANY and/or Wickes, Inc. (Delaware), ABC Insurance Company, Ernest Gross, and Westaff, Inc. (F/K/A Western Temporary Services).
No. 2002 CA 0294.
Court of Appeal of Louisiana, First Circuit.
December 20, 2002.
Rehearing Denied April 8, 2003.
*592 Michael C. Palmintier, Baton Rouge, Counsel for Plaintiffs/Appellants, Ernest and Lucy Griffin.
Charles A. Schutte, Jr., Baton Rouge, Counsel for Defendant/Appellee, Wickes, Inc. and/or Wickes Lumber Co.
Before: PARRO, JAMES, and PATTERSON, JJ.[1]
PATTERSON, J. Pro Tempore.
Ernest Griffin (Griffin) and his major children, Ernest Griffin, Jr., JoAnn Griffin, Michael Griffin, Edward Griffin, and Frederick Griffin, individually and on behalf of the estate of Lucy Griffin, appeal the decision of the trial court granting the motion for summary judgment filed by Wickes, *593 Inc., formerly Wickes Lumber Company (Wickes).

FACTS
Wickes owns and operates retail stores selling lumber and building materials. In 1997, Wickes began a remodeling process designed to update its stores and more efficiently manage its inventory. One of the stores Wickes planned to remodel was located in Baton Rouge, Louisiana. For assistance in the remodeling, Wickes requested laborers from Manpower of Baton Rouge, Inc. (Manpower) and Westaff, Inc. (Westaff), two companies providing temporary labor services. Manpower leased the services of Griffin and Anthony Flowers as temporary laborers from September 9, 1997, through October 10, 1997; Westaff assigned Earnest Gross[2] (Gross) to work at the Wickes store on the same dates. On October 10, 1997, Griffin was injured when a portion of a metal rack fell on him. At the time of the accident, Griffin was working to construct metal racks in the warehouse to be used to store and display lumber maintained in the store's inventory. Manpower provided workers' compensation benefits to Griffin.
Griffin filed the present action against Wickes seeking damages in tort for Wickes' alleged negligence in causing Griffin's damages. Griffin amended his petition and added Gross and Westaff, Gross' direct employer, as additional defendants. Wickes filed a motion for summary judgment asserting it was Griffin's employer and seeking to avail itself of tort immunity under the Louisiana Workers' Compensation Act, La. R.S. 23:1021, et seq. Following a hearing, the trial court determined that Griffin was a borrowed employee, granted the motion for summary judgment, and dismissed Griffin's suit with prejudice.
Griffin appeals and argues the trial court erred in granting the motion for summary judgment, because there are issues of material fact regarding the employment status of Griffin.[3] We affirm.

DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no issue of material fact in dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966B. Summary judgment is favored and "is designed to secure the just, speedy, and inexpensive *594 determination of every action." La. C.C.P. art. 966A(2). The burden of proof on a motion for summary judgment is set forth in La. C.C.P. art. 966C(2):
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
If, as in this case, the issue before the court on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing that there is no genuine issue of material fact remains on the party bringing the motion and does not shift to the adverse party. See La. C.C.P. art. 966C(2); Buck's Run Enterprises, Inc. v. Mapp Const., Inc., 99-3054, p. 4 (La.App. 1 Cir. 2/16/01), 808 So.2d 428, 431. Once the court has determined that there is no genuine issue of material fact, summary judgment should be granted. La. C.C.P. arts. 966 and 967.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Sanders, 96-1751 at p. 7, 696 So.2d at 1035. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can only be seen in light of the substantive law applicable to the case. Walker v. Phi Beta Sigma Fraternity (RHO Chapter), 96-2345, p. 6 (La.App. 1 Cir. 12/29/97), 706 So.2d 525, 528.
Under the Louisiana Workers' Compensation Act, an employee injured in an accident while in the course and scope of employment is generally limited to the recovery of workers' compensation benefits as his exclusive remedy against his employer. La. R.S. 23:1032A(1)(a); Dustin v. DHCI Home Health Services, Inc., 95-1989, p. 3 (La.App. 1 Cir. 5/10/96), 673 So.2d 356, 358.
Louisiana Revised Statute 23:1031C provides:
In the case of any employee for whose injury or death payments are due and who is, at the time of the injury, employed by a borrowing employer in this Section referred to as a "special employer", and is under the control and direction of the special employer in the performance of the work, both the special employer and the immediate employer, referred to in this Section as a "general employer", shall be liable jointly and in solido to pay benefits as provided under this Chapter. As between the special and general employers, each shall have the right to seek contribution from the other for any payments made on behalf of the employee unless there is a contract between them expressing a different method of sharing the liability. Where compensation is claimed from, or proceedings are taken against, the special employer, then, in the application of this Chapter, reference to the special employer shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the general employer by whom he is immediately employed.

*595 The special and the general employers shall be entitled to the exclusive remedy protections provided in R.S. 23:1032.
Louisiana Revised Statute 23:1061A provides:
(1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any "principal" as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.
(2) A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.
(3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer. When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.
Griffin argues that the 1997 amendments to these provisions, overruling the statutory employer tests as stated in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), and Kirkland v. Riverwood International USA, Inc., 95-1830 (La.9/13/96), 681 So.2d 329, were intended to eliminate application of all extensive subjective tests to determine employment status and are not limited to the determination of statutory employers under La. R.S. 23:1061. According to Griffin, the lawmakers intended that any party seeking immunity under the workers' compensation statute, including borrowing employers, must make a commitment in writing. Griffin argues that it would be inconsistent to treat statutory employers and borrowing employers differently; thus, a party seeking the protection of the workers' compensation exclusivity as a *596 borrowing employer should have a written contract, as is required of a statutory employer. We disagree.
Although the stated intent of the legislature in amending La. R.S. 23:1031 and 1061 was to overrule Berry and Kirkland, neither case addressed the concept of a "borrowed employee." Further, had the legislature intended for any party seeking immunity under the workers' compensation act to have a written contract, such a requirement would have been expressly provided. However, the minutes of the House Committee on Labor and Industrial Relations regarding Senate Bill No. 922, which culminated in the amendments of La. R.S. 23:1031 and 1061, do not support this assertion:
A final provision in Senate Bill No. 922 has to do with a borrowed employee, such as a temporary employee. The bill codifies the definition of a borrowed employee. It makes it clear that the individual's employer and the employer "borrowing" the employee would both be responsible for workers' compensation for the employee in the event of an injury. Senator Dardenne said this is not a change to the current law, but simply a codification of longstanding jurisprudence in Louisiana.
Thus, there was no intention of the legislature to require the written contract provision to extend to borrowed employers under La. R.S. 23:1031. Moreover, a plain reading of La. R.S. 23:1031 and 1061 reveals that the written contract provision only applies to statutory employers, not borrowing employers.
The terms "statutory employee" and "borrowed employee" are distinguishable for workers' compensation purposes. This distinction is still recognized following the 1997 amendments to La. R.S. 23:1031 and 1061. Moreover, the test for determining who is a borrowed employee is still applied by the courts. See Doucet v. National Maintenance Corp., 01-1100, p. 8, n. 6 (La.App. 1 Cir. 6/21/02), 822 So.2d 60, 67; Maddox v. Superior Steel, 00-1539, p. 7 (La.App. 1 Cir. 9/28/01), 814 So.2d 569, 574; Vaughn v. BFI Waste Systems of North America, Inc., 01-1105, p. 7 (La. App. 4 Cir. 7/25/01), 793 So.2d 410, 414. Accordingly, we find no merit in Griffin's assertion that there must be a written contract for Wickes, as a borrowing employer, to avail itself of the benefits of tort immunity in the workers' compensation act.
Griffin alternatively argues that regardless of the application of La. R.S. 23:1061 to La. R.S. 23:1031C, the trial court erred in granting summary judgment because genuine issues of material fact exist regarding Griffin's status as a borrowed employee.
The issue of whether a borrowed servant relationship exists is a matter of law for the court to determine. Dustin, 95-1989 at p. 4, 673 So.2d at 359. There is no fixed test, nor is the existence of a contract or any other single factor determinative. However, the following should be considered in determining the existence of a borrowed employee relationship: right of control; selection of employees; payment of wages; power of dismissal; relinquishment of control by general employer; which employer's work was being performed at the time in question; agreement, either implicit or explicit between the borrowing and lending employer; furnishing of instructions and place for performance of the work in question; length of employment; and acquiescence by the employee in the new work situation. Dustin, 95-1989 at p. 4, 673 So.2d at 359; Maddox 00-1539 at p. 7, 814 So.2d at 574.
In support of its motion for summary judgment, Wickes introduced the affidavits *597 of Cliff Burkhart, assistant manager of the Wickes store, and Joseph Ardoin, an employee of Wickes; the deposition of Randy Balcom, the manager of Manpower at the time of this accident; and other documentary evidence. Our review of the record reveals the following undisputed facts: although there was no written agreement between Wickes and Manpower, there was an oral agreement for Manpower to supply laborers to Wickes to implement the remodeling of the Wickes store; Griffin was selected by Manpower to work at the Wickes site; Wickes' employees would direct Griffin on what tasks to perform while at the store; Wickes was responsible for supervising Griffin; Manpower had no supervisor at the store; Griffin's actual paycheck was issued by Manpower, but the funds used to pay Griffin were calculated from the form Griffin turned in to Manpower that had been verified by Wickes' employees; if Wickes was not satisfied with the work done by Griffin, it could request a new worker; Wickes provided all the necessary equipment and tools to perform the rack assembly project that Griffin was participating in at the time of his accident; and, at the time of the accident, Griffin was assisting in the remodeling of the Wickes store. Based on the evidence presented by Wickes in support of its motion for summary judgment, we find that Griffin was a borrowed employee of Wickes. Consequently, we find this assignment of error to be without merit.

CONCLUSION
Given his status as a borrowed employee, Griffin is barred from suing Wickes in tort under the provisions of the Louisiana Workers' Compensation Act. The trial court properly granted the motion for summary judgment and dismissed the portion of the suit against Wickes. The decision of the trial court is affirmed with all costs of this appeal assessed against Griffin.
AFFIRMED.
NOTES
[1] Judge A. Clayton James, retired, and Michael A. Patterson are serving as judges pro tempore by special appointment of the Louisiana Supreme Court.
[2] There are inconsistent spellings of Gross' name in the record, appearing as "Ernest Gross," "Ernest Gros," "Earnest Gross," and "Earnest Gros."
[3] In his brief, Griffin cites La. C.C.P. art. 1915B as authority for this court's jurisdiction over his appeal. Because the instant suit was filed before January 1, 2000, the 1997 version of La. C.C.P. art.1915 is applicable to the case. See Belanger v. Gabriel Chemicals, Inc., 00-0747, p. 6 (La.App. 1 Cir. 5/23/01), 787 So.2d 559, 564 n. 4, writ denied, 01-2289 (La.11/16/01), 802 So.2d 612. The supreme court has determined that the pre-2000 language of La. C.C.P. art.1915 is ambiguous with regard to the availability of appeal is cases under Article 1915A(3) involving summary judgment pursuant to La. C.C.P. art. 966E. See Shell Pipeline Corp. v. Kennedy, 00-3207, p. 5, (La.10/16/01), 799 So.2d 475, 478. In light of the decision in Shell, this court has concluded that the granting of a summary judgment in this situation constitutes a final partial judgment and is appealable. See Pitts v. Fitzgerald, 01-0543, p. 4 (La.App. 1 Cir. 5/10/02), 818 So.2d 847, 850.