951 So.2d 1267 (2007)
Kenneth RAMOS
v.
TULANE UNIVERSITY OF LOUISIANA.
No. 2006-CA-0487.
Court of Appeal of Louisiana, Fourth Circuit.
January 31, 2007.
*1268 Leo J. Palazzo, David D. Bravo, Palazzo Law Firm, APLC, Gretna, LA, for Plaintiff/Appellant.
Gerald A. Melchiode, Frank A. Romeu, Jr., Galloway, Johnson, Tompkins, Burr & Smith, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge EDWIN A. LOMBARD).
EDWIN A. LOMBARD, Judge.
Plaintiff/Appellant, Kenneth Ramos ("Mr.Ramos"), appeals the trial court's judgment granting summary judgment to, and dismissing all tort claims against, Defendant/Appellee, Tulane University of Louisiana ("Tulane"). For the following reasons, we affirm the trial court's judgment.
Relevant Facts
In January 2001, Tulane contracted with Rocker Electric Company ("Rocker Electric") for electrical services to be performed by Rocker Electric on Tulane's facilities. The parties entered into a written Master Service Agreement, executed on or about January 24, 2001 ("the Master Service Agreement"), which specifically provided that Tulane would be considered the statutory employer of Rocker Electric's employees and its subcontractors who provided work or services under the agreement, in accordance with Louisiana Revised Statutes 23:1031 and 23:1061.
A July 17, 2003 Work Order ("the Work Order"), numbered SC83484, set out the scope and time limitations for Rocker Electric to perform electrical/fire alarm modifications at Tulane's Tilton Library. This Work Order was electronically signed by the parties on July 23, 2003 and incorporates by reference the Master Service Agreement.
In July 2003, Mr. Ramos was working as an electrician's helper for H. Rocker Electric Company ("Rocker Electric"). Mr. Ramos alleges that on July 17, 2003, while performing work for Rocker at Tulane's uptown campus, he was asked by a Tulane employee to remove wiring in the ceiling of the Tilton library for purposes of renovation. According to Mr. Ramos, one or more unnamed Tulane employees failed to shut down the electricity in the area where he was working and, as a result, he was electrocuted, causing him to fall off a 20 foot ladder and sustain traumatic brain injuries.
Mr. Ramos filed suit against Tulane asserting numerous allegations of negligence. Tulane moved for summary judgment on the basis that it is not liable to Mr. Ramos in tort because it was Mr. Ramos' statutory employer pursuant to the terms of the Master Service Agreement. Mr. Ramos opposed the motion asserting that Tulane is not entitled to statutory employer immunity because it did not reserve statutory employer status in the July 17, 2003 Work Order. Mr. Ramos further argued that Tulane is not in the trade, business, or occupation of providing electricity. After a hearing on the matter, Judge Rosemary Ledet granted Tulane's motion without assigning reasons, and dismissed Mr. Ramos' claims against Tulane with prejudice. Mr. Ramos then filed the instant appeal.
On appeal, Mr. Ramos argues that the trial court erred in granting summary *1269 judgment to Tulane for four reasons. First, he argues that there was no written contract in effect on the date of the accident that mandated that he was the statutory employee of Tulane. Second, Mr. Ramos argues that Tulane did not reserve statutory employer status in the work order he was performing at the time of the accident. Third, Mr. Ramos argues that the work order refers to a master service agreement that does not exist. Finally, Mr. Ramos argues that electricity is not Tulane's trade, business or occupation.
Law & Analysis
A. Summary Judgment Standard
An appellate court reviews a district court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/05/94); 639 So.2d 730, 750. A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to summary judgment as a matter of law." La.Code Civ. Proc. art. 966(B). The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions such as this. La.Code Civ. Proc. art. 966(A)(2).
B. Statutory Employer
Tulane contends that it is Mr. Ramos' statutory employer and is thus immune from suit in tort. The determination of statutory employer status is a question of law for the court to decide. Trent v. PPG Inductries, Inc., 03-1068, p. 7 (La. App. 3 Cir. 2/4/04); 865 So.2d 1041, 1047. Under the Louisiana Workers' Compensation Act, La. R.S. 23:1061, an employee injured in an accident while in the course and scope of his employment is generally limited to the recovery of workers' compensation benefits as his exclusive remedy against his employer and may not sue his employer, or any principal, in tort. Griffin v. Wickes Lumber Co., 02-0294, p. 4 (La.App. 1 Cir. 12/02/02); 840 So.2d 591, 594, writ denied, 03-1338 (La.09/13/03); 853 So.2d 640. The Louisiana Workers' Compensation Act applies both to a direct employer/employee relationship as well as to a statutory employer/employee relationship. The doctrine of "statutory employer" is codified in La. R.S. 23:1061 and was amended in 1997 to provide that when a valid written contract recognizes the existence of a statutory employer relationship, "there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees that can only be overcome by showing the work performed is not an integral part of or essential to the ability of the principal to generate that principal's good, products, or services." La. R.S. 23:1061(A)(3).[1]
The contract between Tulane and Rocker Electric, as noted above, explicitly recognizes Tulane as the statutory employer of Rocker Electric's employees and subcontractors. *1270 Therefore, under La. R.S. 23:1061(A)(3) and the plain language of the Master Service Agreement, Tulane is presumed to be the statutory employer of Mr. Ramos. The burden now shifts to Mr. Ramos to rebut this presumption by demonstrating that the work he was performing at the time he sustained his injuries was not an integral part of or essential to Tulane's ability to generate its goods, products, or services.
Mr. Ramos argues that he overcomes the presumption because Tulane is not in the business of supplying electricity. Mr. Ramos makes the conclusory statement that ". . . providing working electricity to the students and faculty of Tulane . . . is clearly not what the legislature intended when it amended section 23:1061 in 1997" because "every business in the state could claim it is in the `trade, business or occupation' of electricity." However, in Jackson v. St. Paul Ins. Co., 04-0026, p. 8 (La.App. 1 Cir. 12/17/04); 897 So.2d 684, 689, the Louisiana First Circuit noted, after reviewing the history of the statutory employer doctrine, that the legislature has specifically rejected a restrictive analysis in favor of a more liberal interpretation of the words "integral" and "essential." And, in recent years, Louisiana courts have frequently found that certain work which is ancillary to the statutory employer's operations is nevertheless essential to the ability of the statutory employer's operations. See Johnson v. Tennessee Gas Pipeline Co., 99 F.Supp.2d 755 (E.D.La.2000) (finding that contractor's work of performing catering services onboard an oil and gas compressor facility was integral and essential to the statutory employer's ability to operate its oil and gas compressor facility); Applegarth v. Transamerican Refining Corp., 00-1547 (La.App. 5 Cir. 2/28/01); 781 So.2d 804, writ denied, 01-0834 (La.5/11/01); 792 So.2d 738 (La.2001) (upholding summary judgment where contractor performed construction at a refinery where the refinery was not engaged in providing construction services); Oliver v. Day Zimmermann, 05-3072, 2006 WL 508047 (E.D.La.2006) (holding that the provision of security services at an oil refinery was essential to the refinery's operations).
Under Louisiana Revised Statute section 23:1061(A)(1) "[w]ork shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." Tulane is in the business of educating its students. Working electricity is an essential part of Tulane's day-to-day operations. More specifically, electricity is certainly essential to the effective operation of the university's library, where its students are studying and conducting research at all hours of the day and night. Therefore, pursuant to the definition set out in 23:1061(A)(3), the electrical work performed by Mr. Ramos on *1271 the Tilton Library is surely essential to Tulane's ability to generate its services. Mr. Ramos has not offered any evidence tending to demonstrate that working electricity is not essential to Tulane's ability to educate its students. See Everett v. Rubicon, Inc., 04-1988, pp. 14-15 (La.App. 1 Cir. 6/14/06); 938 So.2d 1032, 1043. Accordingly, we find that Mr. Ramos has failed to rebut the presumption of statutory employment created by statute and the terms of the Master Service Agreement.
Mr. Ramos' three additional arguments against the finding of statutory employment are also unpersuasive. First, Mr. Ramos' statement that the July 17, 2003 Work Order was not electronically signed until July 23, 2003, and therefore, there was no written contract in effect on the date his accident occurred, is incorrect. It is undisputed that the written Master Service Agreement between the parties, which clearly evidences the parties' intent to designate Tulane as Rocker Electric's employees' statutory employer, was signed and in effect at the time of Mr. Ramos' accident. As Tulane correctly points out, nowhere in the Master Service Agreement is it indicated that the General Terms of the Master Service Agreement are in any way affected by the execution date or effectiveness of subsequent work orders. Therefore, regardless of whether the specific Work Order was in effect at the time of Mr. Ramos' accident, the General Terms of the Master Service Agreement expressed the intent of the parties and continued to govern the relationship between the parties.
Likewise, we find no merit in Mr. Ramos' argument that Tulane is not his statutory employer because the July 17, 2003 Work Order did not repeat the statutory employer language from the Master Service Agreement. A thorough review of the Master Service Agreement reveals that there is no statutory or contractual requirement that each work order between Tulane and Rocker Electric repeat the statutory employer language. Rather, what the Master Service Agreement requires, in paragraph 23, is that Rocker Electric (Contractor) include the statutory employer language in its contracts with third parties to reflect Tulane's (Owner) statutory employer status. Since Rocker Electric did not contract with any third parties to perform the work at Tulane pursuant to the Master Service Agreement, this issue is irrelevant to the matter at hand.
Finally, we find that Mr. Ramos' argument that Tulane is not his statutory employer because the July 17, 2003 Work Order refers to a non-existent "February 2, 2003 Master Service Agreement" is merely a red herring. Deposition testimony and affidavits provided by Tulane employees indicates that the reference to the February 2, 2003 Master Service Agreement was a clerical error and that the only contract in effect between the parties at all relevant times was the January 24, 2001 Master Service Agreement. Mr. Ramos has submitted no evidence to suggest that the January 24, 2001 Master Service Agreement is not the authentic and controlling contract in this matter.
Conclusion
There is no doubt that Mr. Ramos' accident at Tulane resulted in serious personal injuries and we sympathize with his plight. However, we find that based on the record, Mr. Ramos' exclusive remedy against Tulane is under the Louisiana Workers' Compensation Act. The Master Service Agreement between the parties specifically designates Tulane as the statutory employer *1272 of Rocker Electric's employees and subcontractors, creating a rebuttable presumption of statutory employment status. Mr. Ramos has not shown that the work he was performing at the time of his accident was not essential to Tulane's operations, and thus he has failed to rebut the presumption that he is a statutory employee of Tulane. Based on the forgoing analysis, we find that the trial court did not err in granting the motion for summary judgment. Accordingly, the summary judgment rendered in favor of Tulane is hereby affirmed.
AFFIRMED.
NOTES
[1] Specifically, La.Rev.Stat. 23:1061 provides:

A. (1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any principal as defined in R.S. 23: 1032(A)(2), undertakes to execute any work, which is part of his trade, business, or occupation and contracts with any person, in this Section referred to as the contractor, for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protection of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under the Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employer under the employer by whom he is immediately employed. For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.
(2) A statutory employer relationship exists whenever the services to work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.