897 So.2d 684 (2004)
Ronald JACKSON and Laura Jackson
v.
ST. PAUL INSURANCE COMPANY and BARRIERE CONSTRUCTION CO., L.L.C., et al.
No. 2004 CA 0026.
Court of Appeal of Louisiana, First Circuit.
December 17, 2004.
Writ Denied March 24, 2005.
Kent B. Payne, Baton Rouge, Counsel for Plaintiffs/Appellants Ronald Jackson and Laura Jackson.
*685 Raymond S. Maher, Jr., New Orleans, Counsel for Defendant/Appellee Gulf Liquids New River Project, L.L.C.
Robert Burns, Jr., Gonzales, Counsel for Defendants St. Paul Insurance Co. and Barriere Construction Co., L.L.C.
Brian Reboul, Metairie, Counsel for Intervenors Tradesmen International, Inc. and Lumbermen's Underwriting Alliance.
Harmony Enterprises, Inc., Monroe, Pro Se Defendant.
Before: WHIPPLE, FITZSIMMONS, and DOWNING, JJ.
FITZSIMMONS, J.
Gulf Liquids New River Project, L.L.C. (Gulf Liquids) processes chemicals for transportation and sale. On October 29, 1999, Gulsby Engineering, Inc. and Gulf Liquids entered into a written contract for construction of Gulf Liquids' new fractionation plant in Geismar, Louisiana. In the contract, the parties agreed that for all employees on the project, including the various layers of subcontracted direct, borrowed, special or statutory employees covered by the Louisiana Workers' Compensation Act, the construction was an integral and essential part of Gulf Liquids' ability to generate its products and services pursuant to La. R.S. 23:1061A(1). The contract also specified that Gulf Liquids was a statutory employer for the purposes of La. R.S. 23:1061A(3).
On January 30, 2001, Mr. Ronald Jackson was injured while working at the construction site. Mr. Jackson's direct employer, Tradesmen International, Inc., provided temporary labor as one of the many subcontractors on the project. Mr. Jackson and his wife, Laura, (collectively referred to as "Mr. Jackson"), filed a suit for damages against various entities, including Gulf Liquids. In response, defendant, Gulf Liquids, filed a motion for summary judgment asserting tort immunity as a statutory employer. The trial court found that Gulf Liquids was a principal and statutory employer entitled to the exclusive remedy protection of La. R.S. 23:1032. By a judgment signed on March 5, 2003, the court dismissed the Jacksons' claims against Gulf Liquids.
Mr. Jackson appealed. Specifically, Mr. Jackson argues that the construction of the new facility was not a part of Gulf Liquids' business or occupation; and thus, Gulf Liquids is not a principal entitled to statutory immunity from the tort suit. After a thorough review, we affirm.
A principal's immunity from tort suit was recognized by the supreme court in Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950). The court found that the activities of "`fishing out'" well tools, drilling, and re-working the principal's wells, activities performed by employees of another company, were closely related and "integral" parts of the principal's trade or business of exploring and producing oil. Thibodaux, 49 So.2d at 854. Therefore, the oil company principal was immune from a tort suit. However, in its analysis of the definition of related activities, the supreme court quoted the following language from Horrell v. Gulf & Valley Cotton Oil Co., Inc., 15 La.App. 603, 131 So. 709, 712 (Orl.1930): "It is no part of the trade, business, or occupation of [a] manufacturing concern to erect its factory building. Its business is to operate it after its erection." See also H. Alston Johnson III, Workers' Compensation § 364, at 163-64 & nn.8-11, in 14 Louisiana Civil Law Treatise (4th ed.2002) (review of jurisprudentially created dichotomy between new construction versus maintenance and repair).
The jurisprudential concept of tort immunity for a principal was first codified in *686 1976 through an amendment to La. R.S. 23:1032, which provided:
The rights and remedies herein granted to an employee or his dependent ... shall be exclusive of all other rights and remedies of such employee against his employer, or any principal or any ... employee of such employer or principal.... For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof. (emphasis added).[1]
Although the 1976 version of Louisiana R.S. 23:1061 mirrored the section 1032 language defining a principal, neither clearly defined "trade, business or occupation." In pertinent part, section 1061 read as follows:
Where any person (in this Section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this Section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. (Emphasis added.)
In its initial interpretations of the statutes, the Louisiana Supreme Court "determined that a contractor was performing a part of the principal's trade, business or occupation, and thus falling under the statute, when the contract work was an integral and/or essential part (or other synonyms) of the trade, business or occupation of the principal." Berry v. Holston Well Service, Inc., 488 So.2d 934, 937 (La.1986). However, over time, the supreme court concluded that the statutory definition was being applied too liberally, which led to "inconsistent and often illogical results since almost everything could be said to be integrally related to the principal's trade, business or occupation." Berry, 488 So.2d at 937. For those reasons, the supreme court in Berry announced that it had "shifted its interpretive analysis regarding the statutory employer defense from one which favored a liberal application of the doctrine to one which [was] more restrictive. In so doing, [it] abandoned the `integral relation' test...." Berry, 488 So.2d at 937. In place of the integral relation test, the Berry court
enunciated the following three-tier analysis for determining whether contract work is part of an alleged principal's trade, business or occupation:
1. Is the contract work specialized? Specialized work is, as a matter of law, not a part of the principal's trade, business, or occupation, and the principal is not the statutory employer of the specialized contractor's employees.

*687 2. Where the contract work is non-specialized, the court must compare the contract work with the principal's trade, business or occupation. At this second step, the court should make the following inquiries:
(i) Is the contract work routine and customary? That is, is it regular and predictable?
(ii) Does the principal have the equipment and personnel capable of performing the work?
(iii) What is the practice in the industry? Do industry participants normally contract out this type of work or do they have their own employees perform the work?
3. Was the principal engaged in the work at the time of the alleged accident?
Kirkland v. Riverwood International USA, Inc., 95-1830, pp. 10-11 (La.9/13/96), 681 So.2d 329, 334-35, citing Berry, 488 So.2d at 937-38.
In 1989, the legislature responded to Berry and amended La. R.S. 23:1061 by adding the following sentence:
"The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work."
See Kirkland, 95-1830 at pp. 11-12, 681 So.2d at 335. After considering the change, a majority of the appellate courts held that the amendment overruled Berry, and reinstated the more liberal integral relation test. Kirkland, 95-1830 at pp. 12-13 & n. 11, 681 So.2d at 335-36 & n. 11
Finally, the issue of legislative intent reached the supreme court in Kirkland v. Riverwood International USA, Inc., 95-1830 (La.9/13/96), 681 So.2d 329. After an historical review of the statutory employer defense, the court found that the 1989 legislative change had not completely abrogated the Berry analysis. Rather, the amendment merely narrowed "the part of Berry dealing only with specialization per se...." Kirkland, 95-1830 at p. 13, 681 So.2d at 336.
In 1997, the legislature again responded by amending La. R.S. 23:1061 through passage of Acts 1997, No. 315, Section 1, effective June 17, 1997. Section 1061A(1) now provides as follows:
"Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any "principal" as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him...." (Emphasis added.)
In addition, the legislature re-defined "the principal's trade, business, or occupation"' as "an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." La. R.S. 23:1061A(1) (Emphasis added.). In Section 2 of Acts 1997, No. 315, the legislature specifically noted that the act prospectively overruled the "statutory *688 employer tests as stated in the Louisiana Supreme Court decisions" of Berry and Kirkland. In Louisiana R.S. 23:1061A(3), the legislature also provided for a new presumption in favor of a principal, if certain requisites were met. Specifically, a rebuttable presumption arose if a written contract existed, between the principal and the contractor, that recognized the principal as a statutory employer. See Trent v. PPG Industries, Inc., 03-1068, pp. 2-4 (La.App. 3 Cir. 2/4/04), 865 So.2d 1041, 1044-45; Applegarth v. Transamerican Refining Corporation, 00-1547, pp. 4-6 (La.App. 5 Cir. 2/28/01), 781 So.2d 804, 805-07, writ denied, 01-0834 (La.5/11/01), 792 So.2d 738; H. Alston Johnson III, Workers' Compensation § 364, at 170-71, in 14 Louisiana Civil Law Treatise (4d ed.2002). Mirroring the definitional language employed in La. R.S. 23:1061A(1), the "presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." La. R.S. 23:1061A(3) (Emphasis added). In the absence of a contract, the only remaining avenue for a claim of statutory employer is the two contract basis provided by La. R.S. 23:1061A(2).[2] The determination of whether a principal is a statutory employer entitled to immunity is a question of law. Maddox v. Superior Steel, 00-1539, p. 4 (La.App. 1 Cir. 9/28/01), 814 So.2d 569, 572.
Generally, summary judgment shall be granted when no genuine issue of material fact remains, and the movant is entitled to judgment as a matter of law. La. C.C.P. art. 966C(1). The burden of proof on a motion for summary judgment remains with the movant. La. C.C.P. art. 966C(2). "However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion ..., the movant's burden... does not require him to negate all essential elements of the adverse party's claim, ... but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim...." La. C.C.P. art. 966C(2). On appeal, summary judgments are reviewed de novo. Jones v. Estate of Santiago, 03-1424, p. 5 (La.4/14/04), 870 So.2d 1002, 1006.
In this case, the material facts underlying the legal determination of whether the principal was an immune statutory employer are not in dispute. The fractionation plant was new construction and the principal, Gulf Liquids, was not in the construction business. However, Gulf Liquids established that a written contract existed between it and the primary contractor, Gulsby Engineering, Inc., which recognized Gulf Liquids as a statutory employer. Thus, pursuant to La. R.S. 23:1061A(3), Gulf Liquids is entitled to the rebuttable presumption that it was Mr. Jackson's statutory employer. The burden then shifted to the plaintiff, Mr. Jackson, to rebut the presumption by showing "the work [was] not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." La. R.S. 23:1061A(3); Trent, 03-1068 at pp. 2-4, 865 So.2d at 1044-45; Applegarth, 00-1547 at pp. 4-6, 781 So.2d at 805-07.
Based on the 1989 and 1997 legislative amendments made in response to the supreme *689 court's restrictive interpretations of the statutory employer defense, and the legislature's stated intention to overrule Berry and Kirkland, we find that the legislature has specifically rejected a restrictive analysis in favor of a more liberal interpretation of the words "integral" and "essential." However, a determination of the scope of the analysis alone does not answer the question of whether construction of a new building or facility would qualify as an integral or essential part of the principal's trade, business or occupation.
Although new construction was found not to be part of the principal's work in most pre-1997 cases,[3] the words of the statute have changed. After the 1997 changes to both sections 1061A(1) and A(3), the principal's "trade, business, or occupation" is now defined as work which is "an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." (Emphasis added.) A building or facility is obviously "essential to the ability of [Gulf Liquids] to generate [its] goods, products, or services." La. R.S. 23:1061A(3). Without a building or facility, it would be virtually impossible for Gulf Liquids to process the chemicals and produce its products for transportation and sale. Though perhaps more expansive than the pre-1997 integral relation analysis, inclusion of new construction in a non-contractor's trade or business is supported by the precise definitional wording chosen by the legislature, and affirmed by the legislative responses to Berry, and subsequently, Kirkland. See Trent, 03-1068 at pp. 9-11, 865 So.2d at 1048-49; Applegarth, 00-1547 at pp. 4-6, 781 So.2d at 806-07.
Mr. Jackson submitted no rebuttal evidence showing that the new plant was not necessary to Gulf Liquids' ability to generate its products. Thus, after applying the relevant law to this case, we find that the construction of the new fractionation plant was part of Gulf Liquids'"trade, business, or occupation," and qualified Gulf Liquids as a statutory employer entitled to the "exclusive remedy protections of La. R.S. 23:1032 ...." La. R.S. 23:1061A(1).
For these reasons, we find that Mr. Jackson failed to overcome the presumption conferred on Gulf Liquids by La. R.S. 23:1061A(3), and we affirm the summary judgment in favor of Gulf Liquids. The costs of the appeal are assessed to plaintiff, Mr. Jackson.
AFFIRMED.
DOWNING, J., dissents and assigns reasons.
DOWNING, J. dissents and assigns reasons.
I respectfully dissent. As the majority points out, at least since 1930 our courts have recognized a distinction between new construction and maintenance and repair. The Legislature is presumed to be aware of that distinction, and it could have specifically eliminated the distinction in 1997. The fact that this distinction was not specifically addressed compels me to the conclusion that the 1997 amendments were not intended to eliminate the distinction.
NOTES
[1] The definition of "principal" appearing in the current version of La. R.S. 23:1032 remains the same. See La. R.S. 23:1032A(2).
[2] The two contract basis governs arrangements between the general contractor and a subcontractor. Whether the work is within the trade, business, or occupation of the general and subcontractor is assumed and not at issue. Gobert v. McDermott, Inc., 634 So.2d 873, 874 (La.App. 1 Cir.1993), quoting Berry v. Holston Well Service, Inc., 488 So.2d 934, 936 n. 3 (La.1986).
[3] H. Alston Johnson III, Workers' Compensation § 364, at 163-64 and nn.9 & 11, in 14 Louisiana Civil Law Treatise (4d ed.2002).