938 So.2d 1032 (2006)
Ray Don EVERETT
v.
RUBICON, INCORPORATED, and Huntsman Chemical Corporation.
No. 2004 CA 1988.
Court of Appeal of Louisiana, First Circuit.
June 14, 2006.
*1033 Frank Tomeny, III, Jason L. Melancon, Tomeny & Fisher, Baton Rouge, for Plaintiff-Appellant Ray Don Everett.
John P. Manard, Jr., Nora B. Bilbro, Phelps Dunbar, LLP, New Orleans, H. Alston Johnson, III, Phelps Dunbar, LLP, Baton Rouge, for Defendant-Appellee Rubicon, Inc.
Before: PARRO, McDONALD, and HUGHES, JJ.
PARRO, J.
Ray Don Everett (Everett) appeals the district court's judgment granting summary judgment in favor of Rubicon, Inc. (Rubicon), finding that Rubicon was Everett's statutory employer and immune from tort liability. We affirm.

FACTUAL AND PROCEDURAL HISTORY
Rubicon is a manufacturer of various chemicals, including Methyl Diphenyl Diisocyanate (MDI). On or about October 2, 2000, Rubicon contracted with Spartan Constructors, Inc. (Spartan) to perform certain maintenance work at Rubicon's MDI facility in Geismar. The work contemplated by the contract included the repair and replacement of the facility's concrete structures, roads, and underground piping for the fire water system. In the written contract, the parties specified that Rubicon was to be considered the statutory employer of Spartan's employees for the purposes of LSA-R.S. 23:1061(A)(3). The parties further agreed that the work to be performed pursuant to the contract was an integral part of and essential to Rubicon's ability to generate its goods, products, or services.
Everett, a direct employee of Spartan, was assigned to perform concrete work at *1034 the Rubicon facility pursuant to the contract. Specifically, Everett was assigned to break up the concrete support pedestals surrounding an amine brine receiver, which Rubicon used to collect waste chemicals normally generated in the production of MDI. While performing this task on or about February 11, 2001, Everett allegedly sustained injuries as a result of exposure to chemical-filled concrete particles at the facility.
Everett subsequently filed this tort action, seeking damages for his injuries.[1] Rubicon responded by filing a motion for summary judgment, alleging that it was entitled to tort immunity as Everett's statutory employer. After a hearing, the district court granted the motion and dismissed Everett's suit against Rubicon. Everett appeals, contending the district court erroneously interpreted and applied the test for determining statutory employer status.

SUMMARY JUDGMENT
An appellate court reviews a district court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Jarrell v. Carter, 632 So.2d 321, 323 (La. App. 1st Cir.1993), writ denied, 94-0700 (La.4/29/94), 637 So.2d 467. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2); Rambo v. Walker, 96-2538 (La.App. 1st Cir.11/7/97), 704 So.2d 30, 32. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).

STATUTORY EMPLOYER DOCTRINE
The test for determining statutory employer status has undergone many changes since it was first established by the Louisiana Supreme Court in Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950). In Thibodaux, the Sun Oil Company (Sun Oil) had contracted with J.C. Chance Well Service, Inc. (Chance) to drill or rework one of its oil wells. Chance then contracted with Houston Oil Field Material Co., Inc. (Houston) to "fish out" drilling tools and implements that Chance employees had lost in the well during the drilling operations. While Chance and Houston employees were carrying out their tasks, the oil derrick belonging to Sun Oil collapsed. As a result, an employee of Houston was injured, and an employee of Chance was killed. Thibodaux, 49 So.2d at 852.
The plaintiffs subsequently filed suit in tort against Sun Oil and others. Sun Oil responded by filing a peremptory exception pleading the objection of no cause of action, contending that the plaintiffs' exclusive remedy was in workers' compensation. In affirming the lower courts' rulings granting the exception, the supreme court stated:
Here, the Sun Oil Company is engaged in the business of exploring for and producing oil. The drilling of wells, the *1035 reworking, if necessary, and the "fishing out" of well tools and implements which become stuck in the course of drilling the well are all interrelated and component parts, though different phases, of oil production. In other words, both Thibodaux and Baker were performing services in connection with work which was part of the business, trade and occupation of Sun Oil Company, or so closely related thereto as to become an integral part thereof. Therefore, the allegations of fact in the instant case clearly bring the matter within the rule of law provided in Section 6, Par. 1 of the Workmen's Compensation statute as now written.[2]
Thibodaux, 49 So.2d at 854.
After Thibodaux, the courts applied this "integral relationship" test very liberally to grant tort immunity to principals, rarely finding instances in which contract work was not a part of the principal's business. However, one area of contract work the courts traditionally held to be outside the principal's trade, business, or occupation was that of new construction and reconstruction of the principal's buildings and facilities. Kirkland v. Riverwood Int'l USA, Inc., 95-1830 (La.9/13/96), 681 So.2d 329, 333. See also Horrell v. Gulf & Valley Cotton Oil Co., Inc., 15 La.App. 603, 131 So. 709 (1930) (it is not part of the trade, business, or occupation of a manufacturing company to erect its factory building); Reeves v. Louisiana & A. Ry. Co., 282 So.2d 503 (La.1973) (it is not the business practice of an oil company to engage a contractor to construct a new coking unit at its refinery). But see Slocum v. Lamartiniere, 369 So.2d 201 (La. App. 3rd Cir.), writ denied, 372 So.2d 569 (La.1979) (construction of new building found to be part of grocery store owner's trade, business, or occupation).
In 1976, the legislature specifically granted tort immunity to a principal for the first time by amending LSA-R.S. 23:1032 to codify the Thibodaux "integral relationship" test. The amended statute tracked the language defining "principal" in LSA-R.S. 23:1061[3] and further provided, in pertinent part:

*1036 The rights and remedies herein granted to an employee or his dependent . . . shall be exclusive of all other rights and remedies of such employee . . . against his employer, or any principal or any . . . employee of such employer or principal. . . . For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.[4]
After this amendment, the supreme court noted that the almost limitless standard of the "integral relationship" test yielded inconsistent and often illogical results, since almost everything could be said to be integrally related to the principal's trade, business, or occupation. Berry v. Holston Well Serv., Inc., 488 So.2d 934, 937 (La.1986). Therefore, in the ten years following the amendment of LSA-R.S. 23:1032, the supreme court began a discernable shift from a liberal to a more restrictive construction of the statutory employer defense. Kirkland, 681 So.2d at 334. See Thompson v. South Central Bell Tel. Co., 411 So.2d 26 (La.1982) (genuine issue of material fact existed as to whether work of breaking concrete and digging underground pathway for telephone conduit was part of telephone company's trade, business, or occupation); Benson v. Seagraves, 436 So.2d 525 (La.1983) (worker who was injured while performing electrical planning and design work in connection with a new service substation for a rural electric cooperative, was not statutory employee of cooperative since cooperative did not have employees who customarily performed such work); Lewis v. Exxon Corp., 441 So.2d 192 (La.1983) (overall project of converting plant from one manufacturing process to another was not part of refinery's normal business, despite the fact that specific task worker was performing at the time of injury could be considered part of refinery's business); Rowe v. Northwestern Nat'l Ins. Co., 471 So.2d 226 (La.1985) (disconnection and reconnection of high voltage electricity was not part of routine maintenance activities, because it was not within the skill, training, or expertise of the principal's employees).
This shift toward a more restrictive interpretation of the test, when used as a defense, culminated in Berry, in which the supreme court formally acknowledged its abandonment of the "integral relationship" test that it had begun to reject with its decisions in Benson, Lewis, and Rowe. According to the supreme court, this shift was necessary because the "integral relationship" test was being interpreted too expansively, thus transforming a doctrine that was originally intended to provide secondary protection to an injured employee *1037 into one that granted immunity to principals, regardless of whether they actually paid compensation. Berry, 488 So.2d at 937. To replace this test, the court established a three-tiered analysis, which it believed was more in line with the purpose of the statutes.
In the first tier of the Berry analysis, a court was required to assess the scope of the contract work. The central question in this step was whether the contract work was specialized or non-specialized. According to the supreme court, contract work determined to be specialized per se was, as a matter of law, not a part of the principal's trade, business, or occupation, and the principal was not the statutory employer of the specialized contractor's employees. In making this assessment, a court was required to look to the entire scope of the contract work, rather than merely the specific task to which the individual employee had been assigned. Berry, 488 So.2d at 937-38.
If the contract work was not specialized, the next tier of the analysis required the court to compare the contract work to the principal's trade, business, or occupation to determine if the contract work could be considered a part of the principal's trade, business, or occupation. To help resolve this issue, the Berry court provided the following non-exhaustive list of guidelines established by prior jurisprudence:
(1) Is the contract work routine and customary? That is, is it regular and predictable? Nonrecurring or extraordinary constructions and repairs usually are outside the scope of the statute. On the other hand, general maintenance and repair work, which by their very nature allow the smooth and continued operation of the principal, are within the scope of coverage.
(2) Does the principal have the equipment and/or manpower capable of performing the contract work? This is a sub-species of the specialty inquiry. . . . Here the primary focus is on determining whether the contract work as relates to the principal is handled ordinarily through employees.
(3) What is the practice in the industry relative to the contract work? Do industry participants normally contract out this type of work or do they have their own employees perform the work?
Berry, 488 So.2d at 938 (citations omitted).
The final tier of the analysis required a court to determine if the principal was engaged in the work at the time of the accident. In order for a principal to come within the scope of the statutory employer statute, he must have been engaged in the enterprise at the time of the injury. Berry, 488 So.2d at 938-39.
Thus, under the Berry analysis, statutory employer status was precluded as a defense when (1) the work was specialized per se, or (2) when the principal was not actually engaged in the contract work at the time of the accident. The second tier of the analysis merely provided a list of some of the factors that the courts had considered in determining statutory employment status in the ten years preceding the Berry decision. Kirkland, 681 So.2d at 335.
In 1989, the legislature amended the first paragraph of LSA-R.S. 23:1061 to provide, in pertinent part:
The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal *1038 has the equipment or manpower capable of performing the work.
The legislature did not indicate that the amendment was intended to respond to the Berry test; however, because the language of the amendment tracked the analysis set forth in Berry, the majority of appellate courts determined that the amendment was intended to legislatively overrule Berry and return to the more liberal "integral relationship" test established by Thibodaux. Kirkland, 681 So.2d at 335-336; see Frith v. American Motorists Ins. Co., 613 So.2d 249, 251 (La.App. 1st Cir.1992), writ denied, 617 So.2d 932 (La.1993); Young v. Lyons Petroleum, Inc., 598 So.2d 702, 706 (La.App. 3rd Cir.), writs denied, 605 So.2d 1149, 1150 (La.1992); Forchia v. Browning-Ferris Indus. of Louisiana, 629 So.2d 1238, 1239 (La.App. 4th Cir.1993); Hanks v. Shell Oil Co., 93-737 (La.App. 5th Cir.1/25/94), 631 So.2d 1189, 1194, reversed on other grounds, 94-0483 (La.4/4/94), 635 So.2d 1118.
In Kirkland, the supreme court addressed a split in the appellate circuits on the effect of the 1989 amendment. However, unlike the majority of the appellate courts, the supreme court determined that the 1989 amendment was intended primarily to overrule the part of Berry dealing with specialization per se and to declare that a finding of specialization was not determinative of the absence of a statutory employer relationship.[5]Kirkland, 681 So.2d at 336. The supreme court further stated:
The 1989 amendment does not prohibit the court's considering the factors enumerated in Berry; the amendment merely proscribes making any one of the factors conclusive of the determination of whether the contract work was part of the principal's trade, business or occupation. In effect, we interpret the 1989 amendment as intended to overrule Berry, but not intended to overrule this court's decisions, in the ten years preceding Berry, that the court was to consider all pertinent factors under the totality of circumstances.
We therefore hold that the appropriate standard under the amended Section 1061 for determining whether the contract work is part of the alleged principal's trade, business or occupation is for the court to consider all pertinent factors under the totality of the circumstances. The presence or absence of any one factor is not determinative, and the presence of one factor may compensate for the lack of another. Among those factors to be considered in determining whether a statutory employment relationship exists are the following:
(1) The nature of the business of the alleged principal;
(2) Whether the work was specialized or non-specialized;
(3) Whether the contract work was routine, customary, ordinary or usual;
(4) Whether the alleged principal customarily used his own employees to perform the work, or whether he contracted out all or most of such work;
(5) Whether the alleged principal had the equipment and personnel capable of performing the contract work;
(6) Whether those in similar businesses normally contract out this type of *1039 work or whether they have their own employees perform the work;
(7) Whether the direct employer of the claimant was an independent business enterprise who insured his own workers and included that cost in the contract; and
(8) Whether the principal was engaged in the contract work at the time of the incident.
Kirkland, 681 So.2d at 336-37.
In 1997, the legislature again amended LSA-R.S. 23:1061 to its present form, which provides:
A.(1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any "principal" as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contract of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an Integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.
(2) A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.
(3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer. When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.
B. When the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor. (Emphasis added).
For the first time, the statute provided a definition for what work should be considered *1040 part of the "principal's trade, business, or occupation." The amendment further provided that when the written contract between the principal and a contractor recognizes a statutory employer relationship, there shall be a rebuttable presumption of such a relationship between the principal and the contractor's employees, whether direct or statutory employees. In addition to these substantive changes in the statute, the legislature specifically noted its intention to legislatively overrule the statutory employer tests stated in Berry and Kirkland.[6]See 1997 La. Acts, No. 315, § 2.
The supreme court has not yet addressed the effect of the 1997 amendment on the statutory employer standard. However, several appellate courts have addressed the amendment, finding that the amendment established a more liberal standard for statutory employer determination.
In Jackson v. St. Paul Insurance Company, 04-0026 (La.App. 1st Cir.12/17/04), 897 So.2d 684, writ denied, 05-0156 (La.3/24/05), 896 So.2d 1042, the principal, Gulf Liquids New River Project, L.L.C. (Gulf Liquids) was in the business of processing chemicals for transportation and sale. Gulf Liquids and Gulsby Engineering, Inc. entered into a written contract for the construction of Gulf Liquids' new fractionation plant in Geismar. The parties agreed that for all employees on the project, including the various layers of subcontracted direct, borrowed, special, or statutory employees covered by the Louisiana Workers' Compensation Act, the construction was an integral and essential part of Gulf Liquids' ability to generate its products and services pursuant to LSA-R.S. 23:1061(A)(1). The contract further specified that Gulf Liquids was a statutory employer for the purposes of LSA-R.S. 23:1061(A)(3). Jackson, 897 So.2d at 685.
Ronald Jackson, who was employed directly by one of the many subcontractors on the project, was injured while working at the construction site. Jackson and his wife then filed a suit for damages against various defendants, including Gulf Liquids. In response, Gulf Liquids filed a motion for summary judgment, contending that it was entitled to tort immunity as a statutory employer. The district court agreed and signed a judgment dismissing the plaintiffs' claims against Gulf Liquids. The plaintiffs appealed, contending that construction of the new facility was not a part of Gulf Liquids' trade, business, or occupation. Jackson, 897 So.2d at 685.
This court determined that Jackson had failed to rebut the presumption established by LSA-R.S. 23:1061(A)(3), because he had not demonstrated that the new plant was not necessary to Gulf Liquids' ability to generate its products. Therefore, the court affirmed the district court's judgment, finding that Gulf Liquids was a statutory employer, because construction of the new plant was part of Gulf Liquids' trade, business, or occupation. Jackson, 897 So.2d at 689.
In reaching this conclusion, this court reviewed the history of the statutory employer doctrine and stated:
Based on the 1989 and 1997 legislative amendments made in response to the supreme court's restrictive interpretations of the statutory employer defense, and the legislature's stated intention to overrule Berry and Kirkland, we find *1041 that the legislature has specifically rejected a restrictive analysis in favor of a more liberal interpretation of the words "integral" and "essential."
Jackson, 897 So.2d at 688-89.
Having determined that the 1997 amendments to LSA-R.S. 23:1061 mandated a more liberal interpretation of the statutory employer relationship, the court's inquiry shifted to whether or not construction of a new building or facility would qualify as an integral part of the principal's trade, business, or occupation under this liberal interpretation. After acknowledging that new construction was found not to be a part of the principal's work in most pre-1997 cases, the court noted that the words of the statute had changed since those cases had been decided. In particular, LSA-R.S. 23:1061(A)(1) now specifies that "work" shall be considered part of the principal's trade, business, or occupation if it is "an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." The court applied that definition to the facts of the case and found that a building or facility was certainly essential to Gulf Liquids' ability to generate its goods, products, or services within the meaning of the statute. The court acknowledged that this interpretation was more expansive than the original "integral relationship" test established by Thibodaux; however, the court determined that such an interpretation was supported by the precise definitional wording chosen by the legislature, as well as by the legislature's obvious intent to overrule the Berry and Kirkland tests. Jackson, 897 So.2d at 689. See also Applegarth v. Transamerican Ref. Corp., 00-1547 (La. App. 5th Cir.2/28/01), 781 So.2d 804, writ denied, 01-0834 (La.5/11/01), 792 So.2d 738 (contractor's work in refurbishing refinery by constructing a retaining wall around the oil tanks and laying cement forms for the installation of pipe racks to transport oil and other products through the refinery was essential to the ability of the refinery to generate its goods, products, or services); Trent v. PPG Indus., Inc., 03-1068 (La.App. 3rd Cir.2/4/04), 865 So.2d 1041 (construction of the foundation and structural steel for a pipeline was essential to the ability of the project owner to generate its goods, products, or services, such that the project owner was the statutory employer of the construction worker).

DISCUSSION
The record demonstrates that Rubicon is a chemical manufacturer and is not in the construction business. Spartan, on the other hand, was incorporated specifically for the purpose of providing construction work for chemical plants. Spartan contracted to provide minor construction work at Rubicon's MDI facility, including the repair or replacement of the facility's curbs, pump bases, and small vessel supports. Rubicon's maintenance division would inspect the facility's concrete structures several times a month and determine what structures needed repair or replacement.
At the time of his injury, Everett was breaking up the concrete of the support pedestals surrounding the amine brine receiver. Thomas C. Evins, Rubicon's maintenance manager, testified by deposition that a properly supported amine brine receiver is necessary to collect and hold the waste chemicals generated in the production of MDI until they can be disposed of properly. Without such a receiver, Rubicon would be unable to produce its chemicals safely or properly.
The written contract between Rubicon and Spartan recognizes Rubicon as the statutory employer of Spartan's employees.[7] *1042 Therefore, pursuant to LSA-R.S. 23:1061(A)(3), Rubicon was entitled to a rebuttable presumption that it was Everett's statutory employer. The burden then shifted to Everett to rebut this presumption by demonstrating that the work he was performing at the time he sustained his injuries was not an integral part of or essential to Rubicon's ability to generate its goods, products, or services.
Everett contends that summary judgment was inappropriate, because the district court erroneously interpreted and applied the test for statutory employer status in this matter. Specifically, Everett contends that the 1997 amendment simply restores the Thibodaux "integral relationship" test as it was refined and restricted by the jurisprudence in the pre-Berry era. In support of this argument, Everett places particular emphasis on the Thompson, Benson, Lewis, and Rowe line of cases decided in the ten years immediately preceding Berry.
In essence, Everett is raising the same argument the supreme court relied on in Berry and Kirkland in an effort to establish and maintain a more restrictive interpretation of the statutory employer doctrine defense. In Berry, the supreme court relied on the jurisprudence narrowing the "integral relationship" test in order to formally reject that test and establish a more restrictive, three-tiered analysis. See Berry, 488 So.2d at 938. When the legislature amended LSA-R.S. 23:1061 in response to Berry, the supreme court in Kirkland attempted to salvage the validity of the restrictive interpretation by specifically finding that the 1989 amendment had not intended to overrule the jurisprudence decided in the ten years immediately preceding Berry. The Kirkland court then established a "totality of the circumstances" analysis based primarily on guidelines culled from this pre-Berry jurisprudence. See Kirkland, 681 So.2d at 336-37.
In response to Kirkland, the legislature again amended LSA-R.S. 23:1061; however, this time, the legislature specifically noted its intention to overrule Berry and Kirkland. Now, Everett asks this court to find that the 1997 amendment only overrules Berry and Kirkland, without affecting the jurisprudence upon which those cases were based. Considering the interplay between the legislature and the supreme court since Berry, there can be no doubt that the legislature intended to reject the restrictive interpretation of the statutory employer doctrine defense found in the pre-Berry jurisprudence in favor of a more liberal interpretation. See Jackson, *1043 897 So.2d at 688-89. Therefore, Everett's argument that the 1997 amendment merely restores the state of the law to its pre-Berry status is untenable.
The legislature further indicated its intent to break from the restrictive interpretation found in the jurisprudence by providing a definition for what work is to be considered a part of the "principal's trade, business, or occupation" for the first time, rather than simply relying on the various interpretations provided by the jurisprudence. In addition, the legislature has now shifted the burden of proof to the employee to rebut the presumption of a statutory employer relationship where a written contract recognizes such a relationship, and the statute specifies the burden the employee must meet in order to rebut the presumption.
In an effort to rebut the presumption, Everett relies on pre-Berry jurisprudence that attempted to define what constituted the "principal's trade, business, or occupation" when there was no statutory definition on which to rely. Everett attempts to conform his argument to the tests established by pre-Berry jurisprudence, characterizing the work performed by Spartan as non-routine, extraordinary construction work. However, Everett has not offered any evidence to rebut the presumption in the manner prescribed by the statute. Specifically, Everett has not provided any evidence tending to demonstrate that a properly supported amine brine receiver is not essential to Rubicon's ability to generate its chemicals. Therefore, we find that Everett has failed to overcome the presumption conferred by LSA-R.S. 23:1061(A)(3), and accordingly, we affirm the judgment of the district court, granting summary judgment in favor of Rubicon, Inc. All costs of this appeal are assessed to the plaintiff, Ray Don Everett.
AFFIRMED.
NOTES
[1] In addition to naming Rubicon as a defendant, Everett also filed suit against Huntsman Chemical Corporation, the alleged parent corporation of Rubicon. Huntsman was dismissed from the proceedings and is not involved in this appeal.
[2] The court quoted the relevant statutes (1914 La. Acts, No. 20, as amended) as providing, in pertinent part:

Section 6: That where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contract of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or his dependent any compensation under this act which he would have been liable to pay if that employee had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then, in the application of this act, reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
* * *
Section 34: The rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this act shall be exclusive of all other rights and remedies of such employee. . . .
Thibodaux, 49 So.2d at 853.
[3] The 1976 version of LSA-R.S. 23:1061 provided:

Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then in the application of the Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.
[4] The current version of LSA-R.S. 23:1032 retains the same definition of principal. See LSA-R.S. 23:1032(A)(2).
[5] Justices Kimball and Victory dissented, stating that they believed the legislature had clearly intended to overrule Berry and return to the more liberal "integral relationship" test of Thibodaux. According to Justice Kimball, any other interpretation would render the 1989 amendment meaningless. Justice Marcus subsequently joined in the dissent after the denial of an application for rehearing.
[6] The use of the expression "legislatively overrule" perhaps clouds the issue. To say that a judicial decision was "legislatively overruled" is a descriptive expression for the legislature changing the law as previously interpreted by the court. St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 819 (La.1992).
[7] The contract between Rubicon (as Owner) and Spartan (as Contractor) contained the following clause:

This Agreement recognizes that Owner shall be considered the statutory employer of Contractor's employees and its subcontractors who provide work or services under this Agreement in accordance with Louisiana R.S. 23:1031 or R.S. 23:1061. Thus Owner is to be granted the exclusive remedy protection of Louisiana [R.S.] 23:1032 and it shall be liable to pay compensation benefits if the immediate employer, Contractor or its subcontractors as applicable, is unable to meet their obligation under the Louisiana Workers' Compensation statute for work or service that is performed under this Agreement. The parties agree that the recognition of the Statutory Employer status is made pursuant to R.S. 23:1061 of the Louisiana Workers' Compensation Statute and that Owner is not the actual employer of any of the employees of Contractor or any of its subcontractors. Further, that Owner has no control or involvement in the hiring, firing, or direct supervision or direction of any such employees. The Work to be performed under this Agreement is an integral part of and essential to the ability of the Owner to generate its goods, products or services.