JOY COSSICH LOBRANO, Judge.
| tThis is a workers’ compensation case, in which the plaintiff/appellant, John C. Maldonado-Mejia (“Maldonado”), appeals the May 6, 2015 judgmént of the Office of Workers’ Compensation (“OWC”) dismissing Maldonado’s disputed claim for compensation, Form LDOL-WC-1008 (the “disputed claim” or “1008”).
The only issue on appeal is whether Maldonado is entitled to workers’ compensation benefits. In particular, the parties dispute whether Maldonado qualifies as an independent contractor of Eversound Kitchen and Bath, L.L.C. (“Eversound”), where the work performed by Maldonado was part of Eversound’s trade, business, or occupation.
This litigation arises from an accident that occurred on July 24, 2012, in which Maldonado fell through the roof[1] of a commercial property rented by Eversound (the “property”), sustaining a head injury and lapsing into a coma.
On July 1, 2018, Maldonado filed a 1008 alleging that he was injured in the course and scope of his employment with Ever-sound, that Eversound had not paid | ^workers’ compensation benefits or medical treatment, and that he was entitled to penalties and attorney’s fees. On July 29, 2013, Kenneth Hui (“Hui”) filed an answer on behalf of Eversound, denying that Maldonado was Eversound’s employee and stating that Hui could think of no reason for Maldonado to be on the roof. According to Hui, “[i]t was the end of the day and I think he climbed up to get his cash.”
This matter proceeded to trial on March 12,2015. The parties agreed to a bifurcated trial, at which the issue of liability would be tried before the issue of damages. The only witness to testify at trial was Hui.[2] Hui tefetified to' the following.
Hui is one of the three owners and members of Eversound. Eversound is in the business of selling and installing cabinets and granite counter tops. The company does not have and has never had employees. Eversound does not have workers’ compensation insurance.
Hui met Maldonado when Maldonado approached Hui at a hardware store to inquire whether Hui needed help. Hui informed Maldonado that Eversound’s lease was ending, and that Eversound needed to move out of the property.
Maldonado offered to assist with moving all items out of and cleaning the property in exchange for $300.00 per day, payable to Maldonado and a helper. Maldonado expected the work would take two to three days. Hui'agreed. Hui did |3not collect an employment application from Maldonado. He did not obtain Maldonado’s social security number. He did not deduct any payroll taxes from the $300.00 daily payment. Hui paid Maldonado in cash. Maldonado hired a helper, and Hui did not pay *1139 the helper any separate amount from what was paid to Maldonado.
Maldonado and Hui agreed that Maldonado would move everything out of the property, clean the area, and place the property in a condition for it to he delivered to the landlord. Cleaning included sweeping and hauling away garbage. The items' moved out of the property were samples of cabinet doors and granite used by Hui to show to customers, as well as a chair, desk, and tools. Maldonado transported these items' to Hui’s home.
Maldonado provided the manpower, vehicle, and tools to perform the work. The only instructions that Hui gave to Maldonado, regarding how to perform the work, were that the property needed to be emptied .and the garbage needed to be removed. Hui provided no other supervision over the work. No evidence was'presented that any representative of Eversound, other than Hui, had any involvement with moving Eversound out of the property.
Hui was not present at the property the entire time while Maldonado was moving and cleaning. While offsite, Hui was doing his “normal job” which included going to customer homes to take measurements for kitchens and bathrooms, giving estimates, and installing cabinets and counter tops. Hui was present in the back office of the property for short intervals.
14At the time the accident occurred,' Hui was on the roof of the property cleaning gutters. He did not ask Maldonado to go onto the.roof or clean the gutters. According to Hui, Maldonado was paid to clean the inside, but not the outside, of the property.
Following trial and post-trial briefing, the OWC rendered judgment finding that Maldonado was neither an employee of Eversound nor was Maldonado an independent contractor where the work performed by him was a part of the principal’s trade, business, or occupation. The OWC dismissed the 1008 with prejudice. This appeal followed.
In workers’? compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC’s findings of fact is the manifest error-clearly wrong standard. Dean v. Southmark Constr., 2003-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117. The existence or non-existence of an employment relationship between an alleged employer and a claimant is a mixed question of law and fact to be reviewed under the manifest error standard. Wilfred v. A. Serv. Cab Co., 2014-1121, p. 3 (La.App. 4 Cir. 5/27/15), 171 So.3d 1007, 1010, writ denied, 2015-1271 (La.9/25/15), 178 So.3d 570.
On appeal, Maldonado sets forth one assignment of error: that the OWC “erred in failing to find that he was entitled to workers’ compensation benefits as either an employee or as an independent contractor performing manual labor that is part of the principal’s trade, business or occupation pursuant to La. R.S. 23:1021(7).”
| ^Maldonado concedes in his brief that he is, by definition, an independent contractor. He does not brief his assignment of error as it pertains to the OWC’s finding that Maldonado was not an employee. “The court may consider as abandoned any assignment of error or issue for review which has not .been briefed.” Rule 2-12.4(B)(4). Accordingly, we deem the issue of whether Maldonado qualifies as an employee abandoned.
We, therefore, turn to the issue of whether Maldonado qualifies as an independent contractor under circumstances that would entitle him to workers’ compensation benefits.
*1140 In determining whether the relationship is one of principal and contractor, the courts consider the following factors: “1.) There is a valid contract between the parties; 2.) The work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; 3.) The contract calls for specific piecework as a unit to be done according to the independent contractor’s own methods without being subject to the control and direction of the principal, except as to the result of the services to be rendered; 4.) There is a specific price for the overall undertaking; and 5.) Specific time or duration is agreed upon and not subject to termination at the will of either side without liability for breach.”1 Steinfelds v. Villarubia, 2010-0975, p. 7 (La. App. 4 Cir. 12/15/10), 53 So.3d 1275, 1280.
Here, there is no dispute that Maldonado was hired to perform a single project, for which the parties agreed upon a specific duration and price. Hui | (¡provided uncontroverted testimony that he provided no tools to Maldonado or his helper and that he gave no supervision or instruction on how the work agreed upon was to be done. We find' that Maldonado was Ever-sound’s independent contractor, but this does not end our inquiry.
Next, we must address whether Maldonado’s work would qualify him for workers’ compensation under the “manual labor exception,” “La. R.S. 23:1021(7) allows workers’ compensation coverage for a certain type of independent contractor engaged in manual labor for a substantial part of the work' time (and La. R.S. 23:1032 allows tort immunity to that type of independent contractor’s ‘employer’).” Steinfelds, 2010-0975 at p. 8, 53 So.3d at 1281, citing Moss v. Tommasi Const., Inc., 2009-1419, p. 8 (La.App. 3 Cir. 5/5/10), 37 So.3d 492, 498. La. R.S. 23:1021(7) provides in pertinent part:
“Independent contractor” means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to, results of his work only, and not as to the means by which such result is accomplished^ and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter.
In Lushute v. Diesi, 354 So.2d 179, 182 (La.1977), the Louisiana Supreme Court held that in-order for an independent contractor to be covered under the “manual labor exception,” he must show that a substantial part of his work time is spent in manual labor in carrying out the terms of his -contract with the principal and the work performed by him is part of the principal’s trade business or occupation. “[T]he jurisprudence has uniformly defined ‘manual labor’ as work |7where the ‘physical’ element predominates over the ‘men-tar element. Steinfelds, 2010-0975 at p. 9, 53 So.3d at 1281, citing Riles v. Truitt Jones Construction, 94-1224, p. 9 (La.1/17/95), 648 So.2d 1296, 1300.
There is no question that Maldonado’s moying and cleaning services were physical in nature, and that the “physical” element predominated over the “mental” element; consequently, Maldonado’s work for Eversound was manual labor. Thus, the remaining question is whether the work performed by Maldonado at the time of the accident was part of Eversound’s trade, business, or occupation.
This Court and other circuit courts of appeal have interpreted what it means for *1141 work to be considered “part of the principal’s trade, business, or occupation” under La. R.S. 23:1061, which is the statute governing statutory employment status. See e.g. Steinfelds, 2010-0975 at p. 10, 53 So.3d at 1282; Miller v. Higginbottom, 33,594, p. 7 (La.App. 2 Cir. 6/21/00), 768 So.2d 127, 132; Guidry v. Gueydan Co-op. Dryer, Inc., 97-874, p. 4 (La.App. 3 Cir. 12/10/97), 706 So.2d 146, 150, on reh’g (La.App. 3 Cir. 3/12/98). See also Lushute, 354 So.2d at 182.[3]
La. R.S. 23:1061(A)(1), as last amended in 1997, provides that “work shall be considered part of the principal’s trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal’s goods, products, or services.” In recent years, several Louisiana courts | shave found that the “legislature has specifically rejected a restrictive analysis in favor of a more liberal interpretation of the words ‘integral’ and essential.’” See Jackson v. St. Paul Ins. Co., 2004-0026, p. 8 (La.App. 1 Cir. 12/17/04), 897 So.2d 684, 688-89; Everett v. Rubicon, 2004-1988, p. 11 (La. App. 1 Cir. 6/14/06), 938 So.2d 1032, 1041; Loflin v. International Paper Co., 34,976, p. 2 (La.App. 2 Cir. 8/22/01), 793 So.2d 533, 535.
Maldonado makes three main arguments in support of his claim that the moving and cleaning work he performed was “an integral part of or essential to” Eversound’s ability-to generate its products and services.
First, h¿ contends that under a liberal interpretation of the 1997 amendment to La. R.S. 23:1061, services unrelated to the principal’s business can be considered “essential” or “integral” to the principal’s goods, products, or services. Maldonado cites to Everett v. Rubicon, in, which the Louisian^ First Circuit Court of Appeal held that, for a construction worker performing, concrete work on support pedestals to, a chemical waste , receptacle at Rubicon’s chemical manufacturing plant, Rubicon was entitled to toft immunity as' the construction worker’s statutory employer. Everett, 2004-1988 at pp. 12-14, 938 So.2d at 1041-43. Maldonado argues that Everett holds that the services provided by the plaintiff, even if unrelated to the chemical manufacturing business, ■were essential in the ability of the defendant to manufacture its chemical products; ’
In Everett, Rubicon's maintenance manager testified that without the chemical waste receptacle, which was the subject of the construction worker’s 19concrete work, Rubicon would be unable to produce 'its chemicals safely or properly. Everett, 2004-1988 at p. 12, 938 So.2d at 1041. Additionally, a written''contract between the construction worker’s payroll employer and Rubicon set forth that Rubicon was to be considered' the statutory employer of the construction workers on the project!. Id., 2004-1988 at p. 2, 938 So.2d at 1033.[4] *1142 The First Circuit specifically found that the “parties further agreed that the work to be performed pursuant to the contract was an integral part of and essential to Rubicon’s ability to generate its goods, products, or services.” Id.[5]
Eversound disputes that Maldonado’s work was essential to Eversound’s business, because Eversound’s business is the sales and installation of countertops and cabinets, and there is no dispute that Maldonado was not retained to sell or install countertops and cabinets. According to Eversound, Maldonado was not |indoing work necessary for the operation of Ever-sound’s business, because, while Maldonado was moving items from and cleaning the rental property, Hui was conducting Eversound’s normal sales and installation business.
Eversound argues that Maldonado’s work was more similar to the independent contractors in Lushute, 354 So.2d 179 and Brown v. State Farm Fire & Cas. Co., 407 So.2d 1251 (La.App. 3 Cir.1981). In Lushute, the Louisiana Supreme Court found that air conditioner repair was not part of the trade, business, or occupation of a restaurant, but was “merely incidental thereto.” Lushute, 354 So.2d at 183 (“[a] properly functioning air-conditioning system, although desirable from the viewpoint of customer comfort and satisfaction, is not necessary for the operation of a restaurant.”). In Brown, the Louisiana Third Circuit Court of Appeal, relying on Lu-shute, found that roof repair was.not a part of the trade, business, or occupation of an attorney’s law office. Brown, 407 So.2d at 1253 (“... a leaky roof near the bathrooms and chimney of an attorney’s law office and the repair thereof ... cannot be considered as a part of the attorney’s trade, business, or occupation.”).
Even considering the more expansive interpretation of the 1997 amendment to La. R.S. 23:1061, we find Everett distinguishable from the facts of this appeal. The construction worker in Everett repaired vital equipment needed for Rubicon, a chemical company, to safely and properly produce its chemicals. Everett was also subject to the presumption of statutory employment, pursuant to a written contract. See infra footnote 4. These are circumstances not present in the case before us. | n Further, we disagree with Maldonado’s argument that the Everett court held that services “even if unrelated” to the principal’s business were essential in the ability of the principal to manufacture its products. Maldonado cites to no case, *1143 and we find none, holding that moving or cleaning work is essential or .integral tó the sales or installation of cabinets and counter tops. Accordingly, we cannot agree with Maldonado’s argument.
Second, Maldonado argues that without his services, Hui would have to cease regular business operations to conduct the move himself. According to Maldonado, such circumstances render his services essential to or an integral part of Ever-sound’s ability to provide its products and services. Eversound contends that the record before u's contains no' evidence that Hui would be required to halt Eversound’s operations or that Eversound would have been unable to conduct its business, in the absence of Maldonado’s services. We agree, as we find no evidentiary support for this argument in the record.
According to Maldonado’s third argument, Eversound or Hui “could be considered to be engaged in the moving business.” Maldonado cites to Slocum v. Lamartiniere, 369 So.2d 201 (La.App. 3 Cir.1979) for the proposition that an employer can be considered to be engaged in more than one trade, business, or occupation, or a new trade, business, or occupation.[6] In Slocum,, a grocer who Undertook construction of a new grocery store building by hiring a carpenter, electrician, plumber, and bricklayer to perform the labor was deemed the employer | pliable for workers’ compensation benefits to the carpenter injured on the job. Id. at 202-04. The grocer ordered and paid for construction materials, while the carpenter paid for his own tools and transportation. Id. at 202.. The carpenter testified that the work done for the grocery store was identical .to the work he had done for general contractors. Id. The court distinguished .the carpenter from the air conditioner repairman in Lu-shute, holding that “a building is an essential part of a grocery store.” Id. at 203. The court found that the. grocer “undertook to contract the construction of his new store and could be considered engaged in a second trade or business as a contractor.” Id.
We find Slocum distinguishable from the facts of this case, and we do not find its reasoning persuasive as to Maldonado’s work. The grocer in Slocum acted as his own general contractor, , assigning work to the carpenter in the same manner that a general contractor would and hiring an entire team of construction professionals to build a new store. On those facts, the Slocum court found that the grocer engaged in a second trade as a contractor. We decline to extend this holding to the mere act of retaining a mover or cleaner to assist with emptying a commercial rental property. We also acknowledge that the analysis of whether a principal is engaging in a new business has been traditionally associated with a principal who undertakes construction, renovation, or repair work. See, e.g., Steinfelds, 2010-0975 at pp. 11-13, 53 So.3d at 1282-84, citing Fonseca v. Marlin Marine Corp., 410 So.2d 674, 677 (La.1981); Ross v. Oak Manor Farms, 96-1070, p. 6 (La.App. 5 Cir. 9/17/97), 700 So.2d 906, 908-09; Rush v. Employers Nat. Ins. Co., 598 So.2d 603, 607 (La. App. 4 Cir.1992). No construction, renovation, or repair work was undertaken by the parties to this appeal. We find that Ever-sound’s actions in this case do not amount to engaging in a second business venture. • We cannot agree with Maldonado’s argument. -Under the facts of this case, Maldonado’s work was not an integral part of or *1144 essential to Eversound’s ability to generate its goods, products, and services.
Accordingly, we find that Maldonado’s work’ was not part of Eversound’s trade, business, or occupation. He is not entitled to workers’ compensation benefits from Eversound for the injuries at issue in this appeal. The OWO was not manifestly erroneous or clearly wrong in dismissing Maldonado’s disputed claim.
As a final matter, Eversound sets forth, for th'e first time in its brief, an “answer” to Maldonado’s appeal, arguing that the OWC erred by not dismissing the 1008 with prejudice on‘the grounds that Maldonado failed to prove a workplace accident during the course and scope of his employment. Eversound also argues that the OWO’s “award should not be disturbed.”
To the extent that Eversound is asking this Court to modify the OWC judgment to make an additional finding of fact,' this answer to appeal is untimely and the assertions cannot be considered by this Court, as it was filed more than fifteen days after both the return day and the lodging of the record. See McIntyre v. Sussman, 2010-1281, p. 9 (La.App. 4 Cir. 10/26/11), 76 So.3d 1257, 1263. An appel-lee seeking modification of the judgment “must file an answer to the 'appeal, 114stating the relief demanded, not later than fifteen days after the return day- or the lodging of the record Whichever is later.” La. C.C.P. art. 2133(A).
To the' extent that Eversound is merely making an alternative argument in support of affirming the OWO judgment, without seeking modification of the judgment, as contemplated in La. C.C.P. 2133(B),[7] Ever-sound would be entitled to assert any argument supported by the record. See Succession of Doll v. Doll, 593 So.2d 1239, 1244 (La.1992). Nevertheless, we do not find it necessary to reach the issue of whether Maldonado proved a workplace accident during the course and scope of his employment, as we find the record supports the OWC judgment on the merits.
For these reasons, we affirm the May 6, 20Í5 judgment of the OWC dismissing Maldonado’s disputed claim.
AFFIRMED.

. In the 1008, Maldonado alleges that he fell thirty feet from a ladder. However, all other pleadings and testimony reflect that Maldonado's injury occurred when he fell through a roof.

. Hui’s name is transcribed in the trial transcript as “Kenneth Wei.” Maldonado refers to Hui as "Mr. Wei" throughout his appellant brief. As the remainder of the record reflects that this witness’ last name is "Hui," we refer to him as "Hui” in this opinion.

. Here, none of the parties argue that Ever-sound was Maldonado’s "statutory employer” as defined in La. R.S. 23:1061, and there is no evidence in the record of a written. contract setting forth an agreement between the parties as to the existence of a statutory employment relationship. Nevertheless, as recognized-by the courts of this state, La. R.S. 23:1061 is also instructive in interpreting the phrase “part of the principal’s trade, business, or occupation” in the context of determining whether an independent contractor’s work qualifies him for workers’ compensation.

. "The doctrine of ‘statutory'employer’ is codified in La. R.S. 23:1061 and was amended in 1997 to provide that when a valid written contract recognizes the existence of a statutory employer relationship, ’ ‘there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor’s1 employees that can only be over *1142 come by showing the work performed is not an integral part of or essential to the ability of the principal to generate that principal’s good[s], products, or services.’ La. R.S. 23:1061(A)(3). [footnote omitted]” Ramos v. Tulane Univ. of Louisiana, 2006-0487, p. 4 (La.App. 4 Cir. 1/31/07), 951 So.2d 1267, 1269.

. This Court reached a similar result in Ramos, 2006-0487 at p. 6, 951 So.2d at 1270-71, finding that an electrical worker failed to rebut the presumption of a statutory employment relationship, which was explicitly set forth in a master service agreement between the electrical worker's payroll employer and Tulane. Citing to Everett, we stated:
Working electricity is an essential part of Tulane’s day-to-day operations. More specifically, electricity is certainly essential to the effective operation of the university’s library, where its students are studying and conducting research at all hours of the day and night. Therefore, pursuant to the definition set out in 23:1061(A)(3), the electrical work performed by Mr. Ramos on the Tilton Library is surely essential to Tulane’s ability to generate its services. Mr. Ramos has not offered any evidence tending to demonstrate that working electricity is not essential to Tulane’s ability to educate its students.
Id., citing Everett, 2004-1988 at pp. 14-15, 938 So.2d at 1043. See infra footnote 4.

. See also Broussard v. Adams, 270 So.2d 913 (La.App. 3 Cir.1972); Evans v. Naihaus, 326 So.2d 601 (La.App. 4 Cir.1976).

. La. C.C.P. art. 2133(B) provides that “[a] party who does not seek modification, revision, or reversal of a judgment in an appellate court, including ’the supreme court, may assert, in support of the judgment, any argument supported by the record, although he has not appealed, answered the appeal, or applied for supervisory writs.”