982 So.2d 887 (2008)
Michele D. MARINO, Individually and on Behalf of her Minor Children, Molly Marino and Michael Marino
v.
BOH BROS. CONSTRUCTION CO., L.L.C., and ABC Insurance Company.
No. 2007-CA-1090.
Court of Appeal of Louisiana, Fourth Circuit.
April 2, 2008.
*888 Gladstone N. Jones III, Lynn E. Swanson, Jones, Swanson, Huddell & Garrison, L.L.C., New Orleans, LA and Andrew L. Kramer, Elkins, PLC, New Orleans, La, for Plaintiff/Appellant.
Michael R.C. Riess, Charles B. Colvin, Kingsmill Riess, L.L.C., New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge JAMES F. McKAY III, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS JR.).
MICHAEL E. KIRBY, Judge.
In the fall of 2004, defendant/appellee, Boh Bros. Construction Co., L.L.C. ("Boh Bros."), was constructing a new five-lane, vertical-lift bridge on Lewis Street over Bayou Teche in New Iberia, Louisiana. As part of the construction project, Boh Bros. had to perform a complicated lift for installation of several ninety-foot steel I-beams, each weighing approximately 40,000 pounds.
On or about Tuesday, November 30, 2004, the Boh Bros. project superintendent in New Iberia, Darryl Marino, called the company's construction engineer, Wayne Duckworth, to request the assistance of qualified ironworkers in performing the lift. In turn, Mr. Duckworth asked Boh Bros.'s general superintendent, Anthony Saladino, whether ironworkers could be sent to the project. Even though the employees at the New Iberia site were not qualified to perform this lift, Mr. Saladino denied the request, which he later confirmed directly with Darryl Marino. Darryl Marino was aggravated by this decision and went to New Orleans a few days later to speak with Mr. Duckworth about the situation. Boh Bros.'s decision not to send ironworkers to the New Iberia site did not change and Darryl Marino was told to proceed with the installation of the I-beams without the personnel requested.
On Tuesday, December 7, 2004, the Boh Bros. employees began rigging and installing the I-beams on the bridge. At approximately 2:40 p.m., the first 40,000 pound I-beam that was being hoisted into place twisted and rolled, landing on plaintiff's Michelle Marino's husband, Anthony "Tony" Marino, causing multiple traumatic injuries that killed him instantly.
After an investigation the federal Occupational Safety and Health Administration ("OSHA") determined that Boh Bros. committed a "serious" violation. In its report, OSHA cited 29 C.F.R. § 1926.753(d)(2)(iii) which provides that when working under suspended loads, all loads shall be rigged by a qualified rigger. OSHA stated in its citation of Boh Bros. that it failed to comply with the aforementioned regulation and proposed a penalty against Boh Bros. of $5,000.00, but the violation was ultimately *889 dismissed as part of a settlement agreement between OSHA and Boh Bros.
Plaintiff Marino, the surviving spouse of the decedent, filed a wrongful death action in the Civil District Court for the Parish of Orleans on behalf of herself and her minor children. Her petition claimed that Boh Bros.'s action constituted an intentional tort and that the defendant knew or should have known was substantially certain that injury would result, but it still intentionally exposed Mr. Marino to a hazard. Boh Bros. filed an exception and answer denying most of plaintiff's allegations and affirmatively asserting the exclusivity provision of the Louisiana Workers' Compensation Act, La. R.S. 23:1032. Thereafter, Boh Bros. filed a Motion for Summary Judgment based upon the fact that Mr. Marino was its employee who was killed in an industrial accident when the I-beam unexpectedly fell on him and that the accident did not result from any intentional act on its part.
After extensive depositions and discovery, the trial court held a hearing. In its oral reasons it cited Simoneaux v. Excel Group, L.L.C., XXXX-XXXX (La.9/1/06), 936 So.2d 1246, for the interpretation of the legislatively imposed standard of what the burden of proof for an intentional act is. The trial court noted no one really knows how the I-beam moved. Thus, even though defendant's actions may have been grossly negligent, they were not "intentional" for the purpose of providing plaintiff a legal delictual/tort action  which would fall outside of the ambit of the workers' compensation scheme.
In a Judgment dated May 24, 2007, the trial court granted defendant's motion for summary judgment, dismissing the plaintiffs' suit with prejudice. It is from this Judgment that plaintiffs appeal.
DISCUSSION
The appellate review of summary judgments is de novo. Grant v. American Sugar Refining, Inc., XXXX-XXXX, p. 3 (La. App. 4 Cir. 1/31/07), 952 So.2d 746, 748.
The issue before us today requires us to determine if the facts presented constitute an intentional act within the meaning of La. R.S. 23:1032. If they do, then plaintiff has a legal remedy in a tort/delictual action for the death of her husband and father of her children. If they do not, then plaintiff's only recourse is the workers' compensation scheme as created in Title 23. La R.S. 23:1032 grants employers immunity from tort/delictual actions to wit:
A. (1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
(b) This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine.

*890 (2) For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
B. Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
C. The immunity from civil liability provided by this Section shall not extend to:
(1) Any officer, director, stockholder, partner, or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and
(2) To the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section.
[Emphasis added.]
Nevertheless, as noted in Subsection B, the workers' compensation statute does not grant immunity to employers when the act causing the injury was "intentional." This is known as the intentional act exception to the exclusive remedy provision, i.e., workers' compensation payments based on the schedule.
In Clark v. Division Seven, Inc., 99-3079 (La.App. 4 Cir. 12/20/00), 776 So.2d 1262, we found an "intentional act" within the meaning of La. R.S. 23:1032, where a roofer fell because a foreman ignored repeated reports that the slanted portion of the roof was wet and slippery. There the foreman demanded that the roofers return to their duties after each hard rain or they would be fired. He made this demand even after a co-worker had slipped on the roof and almost fallen to ground. Clark, supra, is distinguishable from the instant case because no I-beam had fallen prior to the one that fell on Mr. Marino while in Clark, another co-worker had fallen before the plaintiff's fall. When an event had already occurred, and no corrective action had been taken, we found it was substantially certain to happen again. Here however, there was no previous event to put the employer on notice, thus, the Clark rationale does not apply.
In Simoneaux v. Excel Group, L.L.C., XXXX-XXXX (La.9/1/06), 936 So.2d 1246, an electrician's helper's foot was run over by the wheel of a manlift while its operator was working alone in a basket 25 feet off the ground. There was evidence that the operator's conduct was "unsafe" because he was operating the manlift without a spotter. The plaintiff argued that such unsafe conduct met the requirements of the "substantially certain to follow" test, to defeat the employer's statutory immunity. Nevertheless, Simoneaux, citing Reeves v. Structural Preservation Systems, 98-1795 (La.3/12/99), 731 So.2d 208, noted that a belief that someone may eventually get hurt if a workplace practice continued does not rise to the level of an intentional act. Thus, Simoneaux reinforces the workers' compensation grant of immunity for employers, even when they may be guilty of gross negligence. An injured or surviving family's only recourse is the benefits provided by workers' compensation statute.
Under these facts, the actions of Boh Bros. in not providing trained/skilled ironworkers to move and set the I-beams does not meet the intentional act standard. The workers' compensation scheme puts the burden of proof of the intentional act *891 exception on the injured employee. Hoffman v. Target Corp. of Minn., XXXX-XXXX, p. 3 (La.App. 3 Cir. 2/14/07), 951 So.2d 1290, 1292; Brown v. Zurich American Ins. Co., 2007-353, p. 4 (La.App. 3 Cir. 10/3/07), 966 So.2d 1160, 1163; Elmore v. Kelly, 39,800 (La.App. 2 Cir. 7/29/05), 909 So.2d 36. Boh Bros. may have been negligent, as the OSHA citation suggests, but it still receives statutory immunity from La. R.S. 23:1032 because plaintiff has not proved defendant committed an intentional act within the meaning of the workers' compensation.
For the aforementioned reasons, we affirm the grant of summary judgment in defendant's favor.
AFFIRMED.
MCKAY, J., dissents.
MCKAY, J., dissents.
I respectfully dissent and would reverse the trial court's granting of Boh Brothers' motion for summary judgment.
Whether Boh Bros. knew or believed an injury to its employees was substantially certain to occur as a result of its decision to not send ironworkers to the construction site is a material fact which is genuinely at issue as result of the testimony of Boh Bros.'s own employees. If this matter were allowed to proceed to trial, the jury would be tasked to decide, after hearing this testimony and reviewing the evidence, whether Boh Bros. knew or believed that its decision to not send ironworkers, who were needed and requested on at least two occasions on the day of Mr. Marino's death to assist in the lifting and placement of this unusually large I-beam, was substantially certain to result in the injury or death of one or more of its employees.